David Lopez, Esq. (DL-6779)  
LAW OFFICES OF DAVID LOPEZ  
171 Edge of Woods Rd., P.O. Box 323  
Southampton, NY 11968  
631.287.5520 DavidLopezEsq@aol.com

Miriam Tauber (MT-1979)  
MIRIAM TAUBER LAW PLLC  
885 Park Ave. #2A  
New York, NY 10075  
(323) 790-4881 MiriamTauberLaw@gmail.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENNIS J. DONOGHUE, and MARK RUBENSTEIN, <br><br> Plaintiffs, <br><br> - v. - <br><br> AMC ENTERTAINMENT HOLDINGS, INC., <br><br> Nominal Defendant, <br><br> - and - <br><br> ANTARA CAPITAL MASTER FUND LP, <br> ANTARA CAPITAL FUND GP LLC, <br> ANTARA CAPITAL LP, <br> ANTARA CAPITAL GP LLC, <br> and HIMANSHU GULATI, <br><br> Defendants. | Case No. 23-CV-4985 <br><br> **COMPLAINT** <br> **FOR RECOVERY OF** <br> **SHORT-SWING PROFITS** <br> **UNDER 15 U.S.C. § 78p(b)** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs **DENNIS J. DONOGHUE** and **MARK RUBENSTEIN,** by David Lopez, Esq., and Miriam Tauber, Esq., their attorneys, complaining of the Defendants, respectfully allege the following upon information and belief except as to Paragraph 2, which Plaintiffs allege on personal knowledge.

## JURISDICTION

1.     This action arises under the provisions of Section 16(b) of the Securities Exchange Act of 1934 as amended (the "Act"), 15 U.S.C. §78p(b), and jurisdiction is conferred upon this Court by Section 27 of the Act, 15 U.S.C. §78aa.

## THE PARTIES

2.     Plaintiffs are security owners of AMC ENTERTAINMENT HOLDINGS, INC. ("AMC").

3.     Nominal Defendant AMC is a Delaware corporation with principal offices at One AMC Way, 11500 Ash Street, Leawood, Kansas 66211.

4.     Antara Capital Master Fund LP ("Antara Master Fund") is a Cayman Islands exempted limited partnership with offices at 55 Hudson Yards, 47th Floor/Suite C, New York, New York 10001.

5.     Antara Capital Fund GP LLC ("Antara Capital Fund GP") is a Delaware limited liability company with offices at 55 Hudson Yards, 47th Floor/Suite C, New York, New York 10001.

6.     Antara Capital LP ("Antara Capital") is a Delaware limited partnership with offices at 55 Hudson Yards, 47th Floor/Suite C, New York, New York 10001.

7.     Antara Capital GP LLC ("Antara Capital GP") is a Delaware limited liability company with offices at 55 Hudson Yards, 47th Floor/Suite C, New York, New York 10001.

8.     Himanshu Gulati is a natural person with offices or who can be found at 55 Hudson Yards, 47th Floor/Suite C, New York, New York 10001.

9. Antara Master Fund is the direct beneficial owner of all of the AMC securities – i.e., all of the APE shares and the AMC stock and derivatives – that were purchased and sold in the transactions giving rise to Section 16(b) liability as further described herein.

10. Antara Capital serves as the investment manager of Antara Master Fund.

11. Antara Fund GP is the general partner of Antara Master Fund.

12. Antara GP is the general partner of Antara Capital.

13. Himanshu Gulati is the sole member of Antara Fund GP and Antara GP.

14. Each of Antara Capital, Antara GP, Antara Fund GP and Himanshu Gulati may be deemed to be indirect beneficial owners of the AMC securities held by Antara Master Fund to the extent of its or his respective pecuniary interest therein. Such beneficial ownership is through individual agreements governing ownership or profit division, to be produced or otherwise obtained through discovery.

15. At all times relevant the AMC Class A Common Stock and the AMC Preferred Equity ("APE") Units, Each Consisting of a Depositary Share Representing 1/100th Interest in a Share of Series A Convertible Preferred Stock, were registered under Section 12(b) of the Act and were and are traded on the New York Stock Exchange ("NYSE"), a National Securities Exchange located within this District.

16. This action is brought in the right and for the benefit of AMC, which is named as a party Defendant solely in order to have all necessary parties before the Court.

**DEMAND, VENUE, and STANDING**

17. The violations of Section 16(b) of the Act to be described herein involve non-exempt securities in non-exempt transactions engaged in by non-exempt persons within the meaning of the Act.

18. Demand for recovery of short-swing profits was made on February 10, 2023, by shareholder Plaintiff Dennis J. Donoghue; and on February 25, 2023, by shareholder Plaintiff Mark Rubenstein. Additional shareholder demands followed into March 2023. All demands were made more than 60 days ago. AMC having failed to effect collection of short-swing profits due to it and more than 60 days having passed from at least the earliest of the demands, further delay in filing suit would be a futile gesture.

19. Some or all of the transactions to be described herein were effected in whole or in part within the Southern District of New York through the facilities of the New York Stock Exchange.

20. The Defendants all have a place of business and/or are found within the Southern District of New York.

21. Some of the Defendants are non-resident, non-domiciliary aliens as to which venue is proper in any district of the United States at the election of the Plaintiffs and the Plaintiffs elect the Southern District of New York.

22. This action is brought within two years of the times of occurrence of the transactions or of the times when reports required by 15 U.S.C. §78p(a) setting forth the substance of the transactions here complained of were first filed with the Securities and Exchange Commission ("SEC").

23. AMC has suffered injury-in-fact and has standing to have this suit prosecuted on its behalf by reason of (i) the Defendants' breach of a fiduciary duty owed to AMC, such breach consisting of short-swing trading in the shares of AMC while statutory insiders; (ii) conversion of monies belonging to AMC upon completion of any and all short-swing trades; (iii) the reputational disparagement to AMC attendant on having its insiders engage in short swing trading and the

dissemination of such facts by their compliance with Section 16(a) of the Act. Each such injury is a concrete and particularized harm redressable by the Court through this suit.

## BACKGROUND

24. On December 22, 2022, the Defendants and each of them became insiders and fiduciaries of AMC, to wit: more that 10% beneficial owners of any class of equity security issued by AMC, by entering into a Forward Purchase Agreement with AMC (the "Forward"), which provided for Antara Capital to purchase a total of 197,621,297 additional APEs, subject to the fulfillment of customary closing conditions, including satisfaction of the 30-day waiting period under the Hart-Scott-Rodino Antitrust Improvements Act (the "HSR"), as follows: (i) 106,595,106 APEs, at a price of $0.704 per APE (for an aggregate price of $75,065,000); and (ii) 91,026,191 APEs, in exchange for Defendants' sale of certain of the Company's Notes held by the Defendants in the aggregate principal amount of $100 million.

25. Antara Capital, under the terms of the Forward, was further empowered, as between the contracting parties, to waive any condition precedent to closing.

26. Notwithstanding the *30-day* HSR waiting period and other closing conditions waivable by Defendants, the Forward provided Antara Capital with the right to acquire the subject shares *within 60 days at Antara Capital's discretion*. Accordingly, for purposes of determining Defendants' Section 16(b) "insider" status as "beneficial owners" of more than 10% of any class of equity security under applicable SEC Rules, Defendants are deemed to have acquired beneficial ownership of the 197,621,297 APEs at the time of entry into the Forward—i.e., on the Forward execution date of December 22, 2022. *See* SEC Rule 16a-1(a)(1), 17 C.F.R. §240.16a-1 (defining "beneficial ownership" for purposes of determining insider status by reference to the definition

applicable under §13(d)); Rule 13d-3(a), 17 C.F.R. §240.13d-3 ("beneficial ownership" includes all shares over which voting and dispositive authority may be exercised within 60 days).

27. The Forward closing in fact occurred on February 7, 2023—well within 60 days of execution of the Forward on December 22, 2022.

28. The shares acquired by the Defendants under the Forward on December 22, 2022, whereby the Defendants became statutory insiders as "beneficial owners" of more than 10% of outstanding APEs, are not subject to matching against opposite-way transactions under Section 16(b). All of Defendants' purchases and sales thereafter of any class of equity security issued by AMC—including APE Units (which trade under stock symbol "APE"), and AMC Class A Common Stock (which trade under stock symbol "AMC")—are subject to the statute.

29. APE Units were not convertible into AMC shares at the time of the transactions identified in this Complaint. Thus, APEs are not considered "derivatives" of AMC shares, and Defendants' purchases and sales of APEs are not matched against their purchases and sales of AMC stock.

30. Nonetheless, Defendants' purchases of APEs may be matched against their higher-priced sales of APEs within periods of less than six months, according to the "lowest-in/highest-out" method prescribed for computing liability under Section 16(b).

31. Additionally, Defendants' short swing purchases and sales of AMC stock, and their purchases and sales of AMC derivative securities, may be matched against each other in accordance with the rules prescribed by SEC Rule 16b-6, 17 C.F.R. §240.16b-6, as further described herein.

32. Antara Master Fund is liable for the full amount of profit realized from trading APE shares and AMC stock and derivative securities in violation of Section 16(b) as further described herein.

33. Additionally, each of the other Defendants is jointly and severally liable to the extent of their respective non-exempt pecuniary interests in the APE shares and the AMC stock and derivatives traded by or through Antara Master Fund.

34. All short swing profits realized by Defendants as shall be determined to be due to AMC are recoverable by Plaintiffs as shareholders of AMC, the latter having failed to do so after more than 60 days of demand that it act in its own right and for its own benefit.

## CLAIM FOR RELIEF:
## Profits Recoverable Under Section 16(b)

### COUNT I: Profits Recoverable From Trading APE Units

35. **Exhibit A** to this Complaint enumerates all of Defendants' transactions in APE shares after December 22, 2022, the date of execution of the Forward; and performs the "lowest/in, highest-out" matching analysis prescribed under Section 16(b).

36. Defendants' total short swing liability from their APE transactions is calculated at **$4,264,500**. Plaintiffs reserve the right to amend this calculation following discovery and/or to account the reporting of additional trades by the Defendants during the pendency of this action.

### COUNT II: Profits Recoverable From Trading AMC Stock and AMC Stock Options

37. **Exhibit B** to this Complaint enumerates Defendants' purchases and sales of AMC stock, and AMC stock options (i.e., puts and calls). Exhibit B also identifies the treatment of Defendants' option transactions as equivalent to Section 16(b) purchases or sales of underlying stock, as further described below.

38. As provided by SEC Rule 16b-6(a), 17 C.F.R. §240.16b-6: "The establishment of or increase in a call equivalent position or liquidation of or decrease in a put equivalent position shall be deemed a purchase of the underlying security for purposes of Section 16(b) of the Act; and the establishment of or increase in a put equivalent position or liquidation of or decrease in a call equivalent position shall be deemed a sale of the underlying securities for purposes of Section 16(b) of the Act."

39. Under Rule 16b-6(a), Defendants' purchases of AMC call options constitute the establishment or increase of "call equivalent" positions and are deemed equivalent to purchases of the AMC stock underlying the call options for purposes of Section 16(b). Defendants' sales of AMC call options constitute the liquidation or decrease of "call equivalent" positions and are deemed equivalent to sales of the AMC stock underlying the put options for purposes of Section 16(b).

40. Likewise, under Rule 16b-6(a), Defendants' purchases of AMC put options constitute the establishment or increase of "put equivalent" positions and are deemed equivalent to sales of the AMC stock underlying the put options for purposes of Section 16(b). Defendants' sales of AMC put options constitute the liquidation or decrease of "put equivalent" positions and are treated as Section 16(b) purchases of the AMC stock underlying the put options sold.

41. SEC Rule 16b-6(b) provides that "exercises" or "conversions" of derivatives held by an insider are treated as a non-event for purposes of Section 16(b). Accordingly, Defendants' exercise or "settlement" of AMC put and call options are not alleged to constitute "purchases" or "sales" and are excluded from Plaintiffs' analysis.

42. Rule 16b-6(c) prescribes the following procedure for determining profits derived from matching transactions in "call equivalent" and "put equivalent" derivative securities against each other, or against transactions in the underlying stock.

(i) Rule 16b-6(c)(1) provides that profits from matching Short-swing profits in transactions involving the purchase and sale or sale and purchase of [derivative securities](#) that have identical characteristics (e.g., purchases and sales of call options of the same strike price and expiration date …) shall be measured by the actual prices paid or received in the short-swing transactions."

(ii) Rule 16b-6(c)(2) provides that when stock transactions are matched against derivative transactions; or when matching "the purchase and sale of derivative securities having different characteristics but related to the same underlying security," *maximum profits* can be calculated by reference to "the difference in price of the underlying security" on the dates of the matched purchase and sale. *Alternatively*, Rule 16b-6(c)(2) provides that when matching transactions in different derivative securities, profits may be determined "by calculating the short-swing profits that would have been realized had the subject transactions involved purchases and sales solely of the derivative security that was purchased or solely of the derivative security that was sold, valued as of the time of the matching purchase or sale, and calculated for the lesser of the number of underlying securities actually purchased or sold." The "alternative" methodology is employed by matching an actual derivative trade against a hypothetical trade in the same derivative on the date of the matched transaction.

43. To identify Defendants' maximum liability from the AMC stock and stock option transactions enumerated at Exhibit B as provided by Rule 16b-6(c)(2), **Exhibit C** to this Complaint

performs the "lowest-in/highest-out" matching analysis by reference to the closing market price of underlying AMC stock on the purchase and sale dates. Applying this methodology, Plaintiffs estimate Defendants' maximum liability at approximately $20 million.

44. Plaintiffs note that Step #3 of the matching analysis performed at Exhibit C involves the purchase and sale of the same derivative security—i.e., the purchase and sale of an option with the same strike price and expiration date. Accordingly, profits from the match at Step #3 must be computed based on Defendants' actual prices paid and received for the option pursuant to Rule 16b-6(c)(1).

45. While Defendants reported the price at which they sold the option matched at Step #3 of Exhibit C, they did not report their purchase price. (*See* Exhibit B). Plaintiffs are therefore unable to perform the profit computation called for under SEC Rule 16b-6(c)(1) absent discovery.

46. For purposes of this Complaint, Plaintiffs exclude the profits calculated at Step #3 from their calculation of maximum profits under Rule 16b-6(c)(2) and estimate Defendants' maximum liability from their remaining AMC stock and stock option transactions matched at Exhibit C at approximately **$16 million.** Plaintiffs reserve the right to amend this estimate following discovery.

47. Under the "alternative" method provided by Rule 16b-6(c)(2), profits from the transactions in "different derivatives" matched at Exhibit C may alternatively be calculated by matching Defendants' actual derivative transaction price against the price of a hypothetical transaction in the same derivative on the matched transaction date.

48. Because Defendants failed to report their trading prices for some of their purchases and sales of AMC stock options as reflected at Exhibit B, Plaintiffs lack information sufficient to calculate Defendants' liability under the "alternative" or "hypothetical" method provided by Rule

16b-6(c)(2). Plaintiffs reserve the right to amend this Complaint to perform the prescribed alternative profit calculation, to the extent possible, following discovery.

**COUNT III: Profits Recoverable From Writings and Expirations of AMC Stock Options**

49. SEC Rule 16b-6(d), 17 C.F.R. §240.16b-6(d), provides that when options "written" by insiders—i.e., options establishing an insider's obligation to buy or sell securities—expire unexercised within six months of their writing, the premium received by the insider for writing the option is subject to disgorgement.

50. **Exhibit D** to this Complaint lists additional AMC stock options, which: (i) were written by the Defendants on or after December 23, 2022, and (ii) expired unexercised on the dates indicated, within less than six months of their writing by the Defendants.

51. Because the Defendants failed to report the premiums they received for writing some or all of the options identified at Exhibit D, Plaintiffs are unable to calculate profits recoverable from Defendants' writing of these options and their expirations as provided by SEC Rule 16b-6(d).

52. Based on publicly available data reflecting contemporaneous trading prices for the options written by the Defendants enumerated at Exhibit D, Plaintiffs estimate Defendants' premiums and short swing profits from the transactions identified at Exhibit D at *upwards of $3 million*. Plaintiffs reserve the right to amend this estimate and Exhibit D following discovery and/or the reporting of additional transactions by the Defendants during the pendency of this action.

**COUNT IV: Profits Recoverable From Total Return Swaps**

53. In addition to the transactions described at Counts I, II, and III, Defendants also entered into Total Return Swap ("TRS") agreements further described below. **Exhibit E** to this

Complaint enumerates the TRS contracts entered into by the Defendants on or after December 23, 2022, and their treatment as Section 16(b) purchases or sales, as further described below.

54. The TRS agreement entered into by the Defendants on February 3, 2023, required Defendants to pay their counterparty a fixed price, in exchange for the counterparty's payment to the Defendants of an amount equivalent to the market price of the referenced underlying AMC stock on the future settlement date. This TRS agreement established a "call equivalent" position for the Defendants by which they acquired an economic interest in the underlying AMC stock and is treated as a Section 16(b) purchase at the time of Defendants' entry into the TRS under SEC Rule 16b-6(a), discussed above.

55. The remaining TRS agreements enumerated at Exhibit E required Defendants' counterparty to pay a fixed price to the Defendants, and obligated Defendants to deliver the market value of the referenced underlying AMC stock to their counterparty, on the future settlement date. These TRS agreements established a "put equivalent" position for the Defendants by which they became obligated to deliver and dispose of the market value of AMC Stock on the settlement date, and each is treated as a Section 16(b) sale at the time of Defendants' entry into the TRS under SEC Rule 16b-6(a), discussed above.

56. Defendants' entry into each of the TRS agreements identified at Exhibit E may also be matched as purchases and sales of the number of shares of underlying AMC stock referenced by each TRS on the date of Defendants' entry into the TRS. These additional purchases and sales may also be matched against Defendants' purchases and sales of AMC stock and stock options as enumerated at Exhibit B. Plaintiffs reserve the right to include these TRS transactions in any amended calculation of Defendants' liability performed following discovery.

**WHERFORE**, Plaintiffs demand judgment:

a) Requiring the Defendants and each of them to account for and to pay over to AMC the short-swing profits realized and retained by each of them in violation of Section 16(b) of the Act, together with appropriate interest and the costs of this suit;

b) Awarding to Plaintiffs their costs and disbursements including reasonable attorney's, accountant's and expert witness fees; and

c) Granting Plaintiffs such other and further and different relief as the Court may deem just and proper.

Dated: Southampton, New York
        June 13, 2023

                                        */s/  David Lopez*
                                        David Lopez, Esq. (DL-6779)

                                        */s/  Miriam Tauber*
                                        Miriam Tauber, Esq. (MT-1979)

                                        *Attorneys for Plaintiffs*