O52AADONC                    Conference

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DENNIS J. DONOGHUE, ET AL.,

                 Plaintiffs,

           v.                            23 CV 4985 (JHR)

ANTARA CAPITAL MASTER FUND LP,
ET AL.,

                 Defendants.

------------------------------x
                                         New York, N.Y.
                                         May 2, 2024
                                         1:15 p.m.

Before:

                 HON. JENNIFER H. REARDEN,

                                         District Judge

                        APPEARANCES

MIRIAM TAUBER LAW
     Attorneys for Plaintiff
BY:  MIRIAM D. TAUBER

LAW OFFICE OF DAVID LOPEZ
     Attorneys for Plaintiff
BY:  DAVID LOPEZ

AKIN GUMP STRAUSS HAUER & FELD LLP
     Attorneys for Defendant
BY:  KAITLIN D. SHAPIRO
```

O52AADONC                        Conference

```
 1              (Case called)
 2              MR. LOPEZ:  David Lopez, for the plaintiff.
 3              MS. TAUBER:  Miriam Tauber, for the plaintiff.
 4              MR. HUNTER:  James Hunt, for nominal defendant, AMC
 5    Entertainment Holdings Inc. and Josh Amsell, also for nominal
 6    defendant AMC.
 7              MS. SHAPIRO:  Kaitlin Shapiro, for the Antara
 8    defendants.
 9              MR. RAPPAPORT:  Douglas Rappaport, for the Antara
10    defendants.
11              THE COURT:  Got you.  Thank you.
12              All right.  We are here today, of course, for a
13    fairness hearing.  Before me is an application for approval of
14    the shareholder settlement, which includes an award of
15    attorneys' fees.
16         We are here today for a fairness hearing. Before me is an
17    application for approval of a shareholder settlement, which
18    includes an award of attorneys' fees.
19         The proposed settlement disposes of the claims brought by
20    plaintiffs Dennis Donoghue and Mark Rubenstein on behalf of
21    Nominal Defendant AMC Entertainment Holdings, Inc. ("AMC" for
22    short) against defendants Antara Capital Master Fund LP; Antara
23    Capital Fund GP LLC; Antara Capital; Antara Capital GP LLC; and
24    Himanshu Gulati (I will refer to all of these collectively as
25    the "Antara Defendants"). In sum and substance, plaintiffs, who
```

O52AADONC                    Conference

are security owners of AMC, brought this action on AMC's behalf

under Section 16(b) of the Securities Exchange Act of 1934 to

recover quote "short-swing" profit that the defendants

allegedly realized from trading in AMC's equity securities.  On

September 11, 2023, the parties finalized a Stipulation of

Settlement, which was signed and filed with the Court on

September 13, 2023.

Against this backdrop, plaintiffs moved for preliminary

approval of the settlement, which this Court granted in an

order issued on March 8, 2024. In that Order, the Court also

directed AMC to give notice to securityholders of the proposed

settlement, of the settlement hearing, and of the right to

appear; and scheduled this final approval hearing.

In accordance with that Order, on March 12, 2024, AMC

published notice of the settlement on the investor relations

portion of its website; it filed the notice as an exhibit to a

Form 8-K with the SEC; and it issued a press release published

through the Business Wire financial news service.

I also note that one objection was noticed as of April 18,

2024, which was the deadline for submission of any objections.

In connection with today's hearing, I have before me,

among other materials, the following:

The Stipulation of Settlement dated September 11, 2023 and

filed on September 13, 2023;

AMC's motion for final settlement approval;

O52AADONC                     Conference

1          The declaration of James A. Hunter in support of AMC's

2     motion, and the exhibits attached thereto;

3          AMC's memorandum of law in support of its motion;

4          Plaintiffs' memorandum of law in support of AMC's motion;

5     and

6          A Proposed Order and Final Judgment, which was appended as

7     an exhibit to the Stipulation of Settlement.

8          I do not believe that I am in receipt of any opposition

9     papers.  So, it is my understanding that the Antara defendants

10    do not oppose the motion.

11         Do any of the parties wish to add anything before I

12    proceed further.

13         Before I issue a ruling, let me turn back to the matter of

14    objections.  As I noted, as of April 18, one objection had been

15    made, by Philip Goldstein. That was filed on the docket as ECF

16    No. 42-6.

17         Is there anyone here today for the objector who would like

18    to be heard?

19              MR. GOLDSTEIN:  Yes.  I am Phillip Goldstein.

20              THE COURT:  All right.  Mr. Goldstein, if you would go

21    to the podium, please.

22              MR. GOLDSTEIN:  Thank you, your Honor.

23         I'm here not to object to the merits of the

24    settlement, but rather to question the jurisdiction of the

25    Court to consider any action in this case.  I'm a little

O52AADONC                    Conference

1    nervous because I'm not an attorney.  You'll forgive me if I

2    read most of what I have to say.

3              THE COURT:  That is quite all right.

4              MR. GOLDSTEIN:  So, Rule 12(h)(3) of the Federal Rules

5    of Civil Procedure states:  If the Court at any time determines

6    that it lacks subject matter jurisdiction, the court must

7    dismiss the action.  Moreover, the federal courts are under an

8    independent obligation to examine their own jurisdiction and

9    standing is perhaps the most important of the jurisdictional

10   doctrine is what the Supreme Court has stated.

11             This special obligation of every federal court to

12   satisfy itself of its own jurisdiction is not waived, even

13   though the parties are prepared as they are here to concede it,

14   apparently, since they've already agreed to this settlement.

15             So, to establish Article III standing, a plaintiff

16   must show that it suffered an injury in fact that is concrete,

17   particularized and actual or imminent that is not conjectural

18   or hypothetical.

19             Second, that the injury was likely caused by the

20   defendant.

21             And third, that the injury would likely be redressed

22   by judicial relief.

23             This long-standing doctrine of the Supreme Court was

24   re-enforced in an important case, Transunion versus Ramirez, in

25   2021.  And that's going to come into play, I think, in your

1    consideration.

2         By the way, a particularized injury must affect the

3    plaintiff in a personal and individual way.  So, in Transunion,

4    the Supreme Court distinguished between two classes of

5    plaintiffs, both of which had a cause of action authorized by

6    the Fair Credit Reporting Act.  Those that suffered a concrete

7    injury resulting from the alleged violation of the statute by

8    the defendant and those that did not and hence, lacked

9    standing.  Transunion made it clear that standing requires

10   both, one, a cause of action that is injury in the law, which

11   Section 16 certainly provides; and two, a concrete and

12   particularized injury or an injury in fact.

13        By contrast, in an earlier case, Donoghue versus

14   Bulldog Investors, apparently, Mr. Donoghue is a serial

15   plaintiff in Section 16(B) cases.  So, I guess I'll just refer

16   to it as "Bulldog".  In 2012, the Second Circuit held that

17   every violation of Section 16(B) constitutes an injury of fact

18   to the insurer even if the issuer did not allege a concrete and

19   particularized injury.  The Court reasoned that Section 16(B)

20   effectively imposes a fiduciary duty upon every ten percent

21   owner of a company stock to refrain that short-swing trading,

22   and second, that that fiduciary duty endows the company with an

23   enforceable legal right to expect such owner not to engage in

24   short-swing trading.  And therefore, if such trades were made,

25   the deprivation of that right is an injury in fact sufficient

O52AADONC                    Conference

1    for Article III standing.

2            But cases that were brought under federal statutes in

3    the past, they may not have been scrutinized sufficiently for

4    Article III standing are now viewed through the lens of

5    Transunion.  In one such case, Packer versus Raging Capital,

6    brought in the Eastern District of New York to enforce Section

7    16(B), in this case, as in this case, the plaintiff did not

8    allege any actual economic or other harm to the issuer.

9    Consequently, Magistrate Judge Wicks, of the Eastern District,

10   dismissed the case for lack of standing citing, among other

11   cases, a Second Circuit case in 2022 Hardy versus West Point

12   Realty.  And the quote from that case is last term, meaning

13   referring to Transunion, "last term the Supreme Court in

14   Transunion clarified that a plaintiff has standing to bring a

15   claim for monetary damages following a statutory violation only

16   when he can show a current or past harm beyond the statutory

17   violation itself".

18           Packer has been appealed with the only issue being

19   whether Bulldog is still good law.  Oral argument in the Second

20   Circuit is scheduled for next week, next Tuesday, actually, May

21   6.  So, it's coming right on the heels of this case.

22           So, the two points I would want to elaborate on is,

23   number one, Section 16(B) does not make a ten percent

24   stockholder a fiduciary.  As I said, Donoghue versus Bulldog,

25   was premised on its finding of injury and fact whenever 16(B)

1    is violated.  That holding was based on what the Second Circuit

2    panel said was quote, recognition by another earlier panel Ratz

3    versus Clouten, back in 1951, that Section 16(B) effectively

4    makes ten percent beneficial owners fiduciaries as directors

5    and officers were anyway, at least to the extent of making all

6    short-swing transactions by such persons in the issuer's stock

7    breaches of trust.

8          However, Donoghue failed to site or distinguish a 1968

9    labor decision, Second Circuit decision Weill versus Rayet

10   Faberge, in which the court stated that "Any section 16(B)

11   award to the corporation is essentially a windfall, since the

12   corporation has suffered no harm for which it is being

13   recompensed."

14         I submit that Donoghue's labeling every noncontrolling

15   stockholder of a corporation a fiduciary is unwarranted.  In

16   this regard I'd like to raise several points.  The full

17   disclosure.  I am the principal of Bulldog.  I was there.  I am

18   familiar with all the court filings in that case and I attended

19   the oral argument.

20         First of all, we were blind-sided by the ruling of the

21   Second Circuit in that case because fiduciary duty was never

22   raised at any time prior to its ruling by the plaintiff, the

23   district court judge or the panel itself in oral argument.

24   That's to me -- again, I'm not a lawyer but I'd like to fancy

25   myself a pretty good amateur lawyer.  But that seems like a

1    violation of our right to due process because we never had an

2    opportunity to rebut that premises.

3            Secondly, the Second Circuit can unilaterally and I

4    believe improperly, posited an injury in fact which is properly

5    the burden of the plaintiff to establish.

6            In a case just decided about a month ago in the Tenth

7    Circuit, fellowship v. Polis, the Court stated "It is the

8    plaintiff's burden to establish jurisdiction and a federal

9    court is not obliged to conjure up possible theories to support

10   subject matter jurisdiction.

11           And that was a quote from a prior Tenth Circuit case

12   from written by judge, now Justice Gorsuch, for a unanimous

13   court.  That case was Raley versus Hyundai Motor in 2011.

14           Third point is, the word "fiduciary" or its plural,

15   appears 29 times in the 1934 Securities and Exchange Act.

16   However, it does not appear in Section 16.  And in 2019, the

17   Second Circuit stated in that quote "the first cardinal cannon

18   of statutory interpretation is to look at the text and it is

19   only when a statute's text is ambiguous that we turn to other

20   tools of statutory interpretation to help clarify the

21   ambiguity." There is no ambiguity in Section 16 about making

22   the ten percent stockholders fiduciaries.  And as the Second

23   Circuit also said, Congress does not hide elephants in mouse

24   holes.  By contrast, Title 29 U.S.C. Section 1104, which is the

25   ERISA law, elaborates in great detail five very small-print

O52AADONC                    Conference

1   pages about the duties of an ERISA fiduciary.

2           Fourth point is, that just about 80 years ago, 1943,

3   in a Supreme Court case, Securities and Exchange Commission

4   versus Chanery, the Supreme Court rejected an allegation of

5   breach of fiduciary duty by company directors, undisputed

6   insiders and undisputed fiduciaries or trading based upon

7   public information and noted that -- and here is the quote --

8   "The courts do not impose upon officers and directors of a

9   corporation any fiduciary duty which precludes them from buying

10  and selling the corporation's stock." The Donoghue court did

11  not mention let alone attempt to reconcile its holding with

12  Chanery.

13          Fifth point is, common law and case law are contrary

14  to Donoghue v. Bulldog.  Donoghue relied on a prior case which

15  I mentioned, Ratz, quoting from Ratz as follows:

16          "A trustee with the power to sell trust property is

17  under a duty not to sell to himself."  Ratz was a 16(B) case.

18  However, that's an analogy because, although -- and I'm going

19  to quote from a Seventh Circuit case -- that's an inept analogy

20  because although the general rule is the officers and directors

21  cannot deal with the property of the corporation for their own

22  personal benefit or advantage.  This duty does not extend to

23  the outstanding stock of the corporation for the reason that

24  such stock is the individual property of the respective

25  shareholders and not in any sense, the corporation's property.

O52AADONC                    Conference

1           The Donoghue v. Bulldog case cited a New York State

2    case called Diamond v. Oreomuno, to support its conclusion

3    about fiduciary duty.  But the Seventh Circuit subsequent,

4    after Diamond v. Oreomuno, said that that case, that New York

5    State case was a departure from the traditional common law

6    approach which was that a corporate insider did not ordinarily

7    violate its fiduciary duty to the corporation by dealing in the

8    corporation stock unless the corporation was thereby harmed.

9           That case was Freeman versus Vechium, Seventh Circuit

10   1978.

11          Sixth point and last point on fiduciary duty, the

12   assertion that every violation of Section 16(B) is a breach of

13   fiduciary duty is irreconcilable with the Supreme Court 16(B)

14   case called foremost Makesum v. Providence Security, 1976, in

15   which a unanimous Supreme Court expressed concern about 16(B)

16   imposing "Liability without fault", to deem an act that is

17   without fault to constitute a breach of fiduciary duty is an

18   oxymoron.  In a footnote the Court included the following

19   excerpt from a senate hearing between Thomas G. Corcoran, a

20   spokesman for 16(B)'s drafters and a Senator Keen.

21          I'm going to read you this brief excerpt.

22          Senator Keen said, I think it's all right to apply it

23   to an officer or director but I think to require the ordinary

24   investor.  Then Mr. Corcoran says five percent is a lot.  So

25   you can see originally it was five percent and they moved the

1   level I guess up to ten percent.  The bill was originally five

2   percent.  Five percent is a lot in a modern corporation.  Many

3   corporations are controlled by five to ten percent.

4           Senator Keen responds:  They may own or they may sell

5   it.  This applies to all corporations.  And you are getting

6   down to the point where you are interfering with the individual

7   a good deal here.  I Agree with you with respect to officers

8   and directors.

9           Mr. Corcoran responds:  A stockholder owning five

10  percent is much an insider as an officer or director.  Whether

11  he is a particular director or not, he normally is as a

12  practical matter, a director.

13          Senator Keen says:  He might not be.

14          Therefore, unlike the Donoghue court, which did not

15  cite again foremost Makesum, it seems that at least one senator

16  at the time did not think a ten percent stockholder was

17  automatically a fiduciary.

18          But then the second point is even if Section 16(B) did

19  expressly declare that every ten percent share holder is a

20  fiduciary, which it does not as I said, that does not transform

21  a breach of fiduciary duty from a legal injury into a concrete

22  factual injury.

23          Indeed, as your Honor and every lawyer in this room

24  surely knows, in order to establish a breach of fiduciary duty,

25  the plaintiff must demonstrate, one, the existence of a

O52AADONC                     Conference

fiduciary relationship; two, the breach of that duty owed by

the fiduciary to the plaintiff and more importantly; three,

harm to the plaintiff.  A breach of fiduciary duty may be

harmless, in which case the plaintiff's claim fails.

Donoghue used judicial slight-of-hand to conflate a

common law cause of action that is a breach of fiduciary duty

and a factual injury stemming from the breach.

Transunion, which needs to be applied and I presume

will be applied in the Raging Capital case, the Packer case on

Tuesday, Transunion clarified that "Standing is not dispensed

in gross.  Rather, plaintiffs must demonstrate a concrete and

particularized injury."

More important however, Transunion put an end to

federal courts hearing claims based on non existent injuries

regard less of historical pedigree.  And Transunion, which used

the historical analogue test does not suggest otherwise.  That

test asks whether a modern injury bears a close relationship to

a harm, not a cause of action traditionally recognized by

common law courts.  It does not transform into a concrete

factual injury what the common law has historically regarded as

a legal injury.  Put it differently, a historical record is no

talisman and a fiduciary is not a magical record that

eliminates the plaintiff's obligations to establish the

existence of an injury in fact.

A historical analogical harm is necessary but not

O52AADONC                    Conference

1    sufficient to satisfy Article III's concreteness requirement.

2    In sum, post-Transunion no longer is a legal injury sufficient

3    to create standing.  Under Article III, an injury in law is not

4    an injury in fact and only those plaintiffs who have been

5    concretely harmed by defendant may sue in federal court.

6            Now, I concede that there are those who disagree with

7    what I've said.  Among them are several judges in this district

8    that have declined to agree with Judge Wick's view that Bulldog

9    is inconsistent with Transunion.  However, I refer the Court to

10   perhaps a more important decision than Transunion, a 2020

11   decision by the U.S. Supreme Court that was not cited by Judge

12   Wicks but that directly addresses the question of whether a

13   breach of fiduciary duty, per se, constitutes an injury in

14   fact.

15           In that case Thoe versus U.S. Bank, the plaintiffs who

16   were participants in a defined benefit retirement plan, which

17   is a type of pension plan which guarantees them a fixed payment

18   each month regardless of the plan's value or its fiduciaries

19   good or bad investments, these plaintiffs filed a lawsuit under

20   ERISA, the Employer Retirement Income Security Act of 1974

21   alleging that the defendants, including U.S. Bank violated

22   ERISA's duty of loyalty and prudence by purely investing the

23   plan's access.

24           The solicitor general and the Department of Labor

25   jointly file an amicus brief in which they asserted that,

O52AADONC                    Conference

1    quote, "An ERISA beneficiary has standing to sue a fiduciary

2    that breaches its duties without the need to demonstrate any

3    injury beyond the breach itself."

4          And four of those Supreme Court justices agree.  They

5    insisted that the participants in a pension plan incurred de

6    facto injury from having the personal legal rights invaded,

7    even absent financial harm.  However, the five justices in the

8    majority did not agree with the minority.  And they held that

9    "The fact that ERISA affords all participants, including

10   defined benefit plan participants a cause of action to sue does

11   not satisfy the injury and fact requirement here."  And it's

12   cited Spokeo to the effect, which is a former standing case

13   prior to Transunion.  Cited Spokeo to the effect that "Article

14   III standing requires a concrete injury even in the context of

15   a statutory violation.  In other words, a plaintiff that would

16   be no better off had the alleged statutory violation not

17   occurred does not have an injury in fact, and in this case, no

18   such actual injury has been alleged."

19         Therefore, in conclusion, I think the one thing we can

20   all agree on, there's been a lot of talk from me about

21   fiduciary duty is that every lower federal court, including

22   this one, has a fiduciary duty to abide by the majority of the

23   Supreme Court.  Therefore, for the reasons I've articulated, I

24   urge this Court to either dismiss this case for lack of

25   standing or defer making any ruling until the Second Circuit

O52AADONC                         Conference

1    rules on the Packer appeal.

2            Thank you very much.

3            THE COURT:  All right.  Thank you, Mr. Goldstein.

4            I will address your objection when I give my ruling.

5    I am going to proceed now to give you my ruling.  Let me

6    proceed now to my ruling.

7        As an initial matter, I have reviewed the proposed

8    settlement under the standards set forth in the 2021 decision

9    issued by Magistrate Judge Gorenstein and then adopted by Judge

10   Carter, Revive Investing LLC v. FBC Holdings S.A.R.L.,

11   published at 2021 WL 56905.  I will also note that various

12   other courts in this district have since cited and referenced

13   Revive Investing with approval.  In that decision, Judge

14   Gorenstein noted that courts have almost universally recognized

15   that agreements purporting to resolve Section 16(b) proceedings

16   must be scrutinized.  To that end, Judge Gorenstein noted, some

17   courts have scrutinized such agreements under the fair,

18   reasonable and adequate standard of Federal Rule of Civil

19   Procedure 23(e)(2); and others have used the standard that

20   courts regularly have used in deciding whether the settlement

21   of a derivative action should be approved.  Relatedly, Judge

22   Gorenstein pointed out, these courts have often considered the

23   factors that are set forth in City of Detroit v. Grinnell

24   Corporation, a Second Circuit decision from 1974, reported at

25   495 F.2d 448.  And these factors include the following:

O52AADONC                    Conference

1    The risks of establishing liability;

2    The risks of proving damages; complexity, expense and likely

3    duration of litigation;

4    The ability of defendants to withstand a greater judgment;

5    The range of reasonableness in light of the maximum possible

6    recovery and range of reasonableness in light of all of the

7    attendant risks of the litigation; and

8    The reaction of other shareholders to the settlement.

9    There has also been a potential additional factor identified in

10   Section 16(b) settlements.  That is identified as the

11   congressional purpose to cause disgorgement of short-swing

12   trading profits by corporate insiders, even when the

13   corporation is unwilling to prosecute such a suit and a

14   derivative plaintiff brings suit instead.

15       These factors, including this additional factor, are

16   discussed at some length in the case of FTR Consulting Group ex

17   rel. Cel-Sci Corp. v. Advantage Fund II Ltd., a 2005 SDNY

18   decision that is contained at 2000 WL 2234039 and that is often

19   cited by courts in this District.

20       So, I have considered these authorities, and other cases

21   like them, together with the parties' papers and the objection

22   by Mr. Goldstein).  And based on that review, I will be

23   granting the unopposed motion to approve the settlement.

24       Here, most, if not all, of these factors favor approval.

25       To begin, Plaintiffs faced not insignificant litigation

O52AADONC                    Conference

1    risks, for the reasons thoroughly explicated, in part, on pages

2    7-11 of AMC's papers.

3        I will note that, even if Plaintiff prevailed on

4    liability, it is quite possible that they would recover less

5    than the $27.25 million "maximum" profit, and it is quite

6    likely that the maximum profit would be closer to $3.8 million.

7        In addition, there is substantial complexity and expense

8    involved in short-swing profits cases, and the possibility of a

9    lengthy and expensive trial favors settlement.

10        Moreover, the $3.3 million settlement still constitutes a

11    large portion of the most likely possible recovery of $3.8

12    million.

13        Furthermore, AMC's brief and the Hunter Declaration evince

14    the thorough and robust investigation that was undertaken in

15    connection with the claims brought here and the eventual

16    proposed settlement.

17        As for the reaction of other shareholders to the

18    settlement, the scant number of objectors—[a single objection,

19    to be exact]—indicates that the settlement has been broadly

20    received favorably.

21        The one objection that was noticed—specifically, from

22    Philip Goldstein is overruled.

23        For one, the objection is defective. It is unsigned, which

24    flouts Rule 11(a) of the Federal Rules of Civil Procedure. That

25    Rule provides, in relevant part that, quote, "every pleading,

O52AADONC                    Conference

1    written motion, and other paper must be signed by at least one

2    attorney of record in the attorney's name or by a party

3    personally if the party is unrepresented." In addition, to my

4    Chambers' knowledge, Mr. Goldstein's objection was not properly

5    filed with the Court in accordance with my March 8 Order.

6        Putting these defects aside, Mr. Goldstein's contention

7    that the court lacks subject-matter jurisdiction over this

8    matter is without merit. The Second Circuit has held that

9    stockholder plaintiffs have Article III standing to pursue

10   claims for recovery of profit under Section 16(b), and I am

11   citing here to the 2012 decision, Donoghue v. Bulldog Investors

12   General Partnership, published at 696 F.3d 170. Every court but

13   one has concluded that Bulldog remains good law; the one

14   outlier decision was issued by an out-of-District court, and,

15   as Mr. Goldstein himself acknowledges, is currently on appeal.

16   Sitting as the District Court, I am bound by the Second

17   Circuit's holdings, and Mr. Goldstein's arguments do not, and

18   cannot, alter the Circuit's ruling in Bulldog.

19       In sum, under the Second Circuit's established authority,

20   authority that, it bears repeating, remains good law unless and

21   until the appeals court reverses course and rules otherwise AMC

22   and the plaintiffs had constitutional standing to raise the

23   Section 16(b) claims in this settlement. Mr. Goldstein's

24   objection is thereby overruled.

25       Finally, the settlement furthers the congressional purpose

O52AADONC                    Conference

1   of forcing corporate insiders to disgorge short-swing trading

2   profits. As aptly stated in AMC's papers, quote, "The proposed

3   settlement gives AMC the most real and tangible of benefits:

4   cold, hard cash, to be paid by wire within ten business days of

5   a final, non-reviewable order of approval." Requiring the

6   Antara Defendants to disgorge $3.3 million in cash under the

7   terms of the settlement certainly advances the congressional

8   purpose of Section 16(b).

9        In short, on balance, the factors I have just addressed

10   strongly favor approval.

11        Having approved the settlement, I'm now going to turn to

12   the portion of the settlement that concerns attorney's fees.

13   While the parties correctly note that, under the circumstances

14   here, the attorney's fees provided for under the proposed

15   settlement may not even require Court approval, I have assessed

16   the contemplated fees and find that the proposed award of

17   $742,500 is reasonable.

18        Here, the $742,500 in the settlement agreement represents

19   a contingency fee of 22.5% earned by AMC's Section 16(b)

20   attorney James Hunter.  To wit, the settlement terms do not

21   require AMC to pay any fees out of its recovery other than that

22   22.5% fee, and Mr. Hunter has agreed to divide the fee evenly

23   with plaintiffs' counsel.  And, for the reasons stated in the

24   parties' papers, I find that this fee was negotiated and agreed

25   to in a transparent and good-faith manner, thereby eliminating

O52AADONC                       Conference

1  any possibility of collusion, and is fair to AMC in view of the

2  additional fees, risk, and uncertainty AMC may have otherwise

3  faced.  Accordingly, I conclude that the proposed fee award is

4  appropriate.

5       AMC has submitted a proposed order and final judgment.

6  The Court will issue an order and final judgment shortly.

7       Is there anything else that anyone wishes to be heard on?

8       All right.  Hearing nothing further, we are adjourned for

9  today.  Thank you, all.

10       I would like to get a transcript of this proceeding

11  ordered.  Has anyone done that?  If you could order it and

12  split the costs as you see fit, that would be helpful to the

13  Court.

14            Thank you all.  We are adjourned.

15                      (Adjourned)

16

17

18

19

20

21

22

23

24

25